IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| DIGIMEDIA TECH, LLC, | |
| Plaintiff, | |
| v. | CIVIL ACTION |
| | NO. _____ |
| REDFIN CORPORATION, | |
| Defendant. | **Jury Trial Demanded** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff DigiMedia Tech, LLC ("Plaintiff") files this Complaint for Patent Infringement and states as follows:

## THE PARTIES

1.    Plaintiff is a limited liability company organized and existing under the laws of the State of Georgia, having its principal office at 44 Milton Ave., Suite 254, Alpharetta, GA 30009.

2.    Upon information and belief, Defendant Redfin Corporation is a Delaware corporation having a regular and established place of business in this Judicial District:

### Find a Redfin office near you

These are our physical office locations. If an office location is not listed in your area, contact us via phone or e-mail using the information above. We have Redfin agents all over the country.

AL • AK • AZ • AR • CA • CO • CT • DC • DE • FL • GA • HI • ID • IL • IN • IA • KS • KY • LA • ME • MD • MA • MI • MN • MS • MO • MT • NE • NV • NH • NJ • NM • NY • NC • ND • OH • OK • OR • PA • RI • SC • SD • TN • TX • UT • VT • VA • WA • WV • WI • WY

BC • ON

Texas

| Austin | Frisco | Houston | San Antonio |
|---|---|---|---|
| 10415 Morado Circle, Suite 350 | 2611 Internet Blvd, Suite 200 | 401 Franklin St, Suite 2550 | 300 East Sonterra Blvd, Suite 1180 |
| Austin, TX 78759 | Frisco, TX 75034 | Houston, TX 77201 | San Antonio, TX 78258 |
| Map | Map | Map | Map |
| | | Email: houston@redfin.com | |

Copyright: © 2025 Redfin. All rights reserved.

Updated January 2023: By searching, you agree to the Terms of Use, and Privacy Policy.

Do not sell or share my personal information.

REDFIN and all REDFIN variants, TITLE FORWARD, WALK SCORE, and the R logos, are trademarks of Redfin Corporation, registered or pending in the USPTO.

https://www.redfin.com/about/contact-us

## **JURISDICTION AND VENUE**

3.    This Court has exclusive subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1338(a) on the grounds that this action arises under the Patent Laws of the United States, 35 U.S.C. § 1 et seq., including, without limitation, 35 U.S.C. §§ 271, 281, 284, and 285.

4.    This Court has personal jurisdiction over Defendant, consistent with due process. Defendant has minimum contacts with this State, and Defendant has purposefully availed itself of the privileges of conducting business in this State, including through the sale, offer for sale, and/or use of the accused products and/or services throughout this State.

5.    Venue is proper in this Court pursuant to 28 U.S.C. § 1400(b) on the grounds that Defendant, on information and belief, has a regular and established place of business and has committed acts of infringement in this state.

## **FACTUAL BACKGROUND**

**Plaintiff's Efforts to Resolve This Matter Outside Litigation**

6.     On April 30, 2025, Plaintiff, via counsel, sent Defendant a draft complaint for infringement of the patents asserted herein and offering to engage in discussions regarding resolution outside litigation.

7.     Plaintiff's licensing agent followed up with Defendant on May 2, 2025, offering to engage in licensing discussions on behalf of Plaintiff and affiliated entities.

8.     While Defendant then responded through counsel and the parties subsequently had communications over a period of months, Defendant eventually ceased responding to Plaintiff's outreaches.

**U.S. Patent No. 7,287,088**

9.     Plaintiff is the owner by assignment of all right, title, and interest in and to United States Patent No. 7,287,088, entitled "Transmission Bandwidth and Memory Requirements Reduction in Portable Image Capture Device by Eliminating Duplicate Image Transmissions" ("the '088 patent"), including the right to sue for all past, present, and future infringement, which assignment was duly recorded in the USPTO.

10.     A true and correct copy of the '088 patent is attached hereto as Exhibit A. The '088 patent is incorporated herein by reference.

11.     The application that became the '088 patent was filed on October 6, 2000.

12.     The '088 patent issued on October 23, 2007, after a full and fair examination by the USPTO, with 429 days of patent-term adjustment.

**U.S. Patent No. 7,587,514**

13.     Plaintiff is the owner by assignment of all right, title, and interest in and to United States Patent No. 7,587,514, entitled "Transmission Bandwidth and Memory Requirements Reduction in Portable Image Capture Device by Eliminating Duplicate Image Transmissions"

("the '514 patent"), including the right to sue for all past, present, and future infringement, which assignment was duly recorded in the USPTO.

14.     A true and correct copy of the '514 patent is attached hereto as Exhibit B. The '514 patent is incorporated herein by reference.

15.     The '514 patent claims priority to a patent application filed on October 6, 2000.

16.     The '514 patent issued on September 8, 2009, after a full and fair examination by the USPTO, with 92 days of patent-term adjustment.

**U.S. Patent No. 8,073,965**

17.     Plaintiff is the owner by assignment of all right, title, and interest in and to United States Patent No. 8,073,965, entitled "Transmission Bandwidth and Memory Requirements Reduction in Portable Image Capture Device by Eliminating Duplicate Image Transmissions" ("the '965 patent"), including the right to sue for all past, present, and future infringement, which assignment was duly recorded in the USPTO.

18.     A true and correct copy of the '965 patent is attached hereto as Exhibit C. The '965 patent is incorporated herein by reference.

19.     The '965 patent claims priority to a patent application that was filed on October 6, 2000.

20.     The '965 patent issued on December 6, 2011, after a full and fair examination by the USPTO, with 220 days of patent-term adjustment.

21.     The '088 patent, the '514 patent, and the '965 patent are related and share a common specification. They are referred to collectively as "the '088 Family Patents."

22.     The '088 Family Patents are legally presumed to be valid, enforceable, and directed to patent-eligible subject matter.

23.    As of the priority date of the '088 Family Patents, few of the 89.3 million

cellphones in the U.S. had Internet access. Exhibit G (available at

https://web.archive.org/web/20220119213228/https://www.wired.com/2000/07/wireless-banking-

bust-in-u-s/), incorporated herein by reference.

24.    Another article published in July 2000 (shortly after the priority date of the '088

Family Patents) noted this same reality, observing that Americans were most likely to access the

internet on a desktop computer. Exhibit H (available at

https://web.archive.org/web/20220930122255/https://www.wired.com/2000/07/3g-is-not-2-be-4-

now-anyway/), incorporated herein by reference.

25.    And early mobile devices like cell phones that included Internet connectivity were

generally focused on text, with significant multimedia capability seen as an advance that was still

in the future. Exhibit I (available at https://www.deseret.com/1999/9/22/19466922/wireless-web-

an-idea-whose-time-has-come-at-last/?utm_source=chatgpt.com), incorporated herein by

reference.

26.    Indeed, a CNN article filed the month after the priority date of the '088 Family

Patents stated that "Wireless devices receive and transmit data at a mere 9.6-kbps, which makes

for long waits while surfing." Exhibit J, available at

https://www.cnn.com/2000/TECH/computing/07/10/what.is.wap.idg/index.html. Thus, CNN

characterized the "wireless Web" as "currently [being] more hype than reality." *Id*. The article

described that to address the limited capabilities of then-current mobile electronic devices, the

industry had developed a wireless protocol that provided "text and hyperlinks, but no graphics,"

to mobile devices. *Id*.

27.     A 2002 paper published in *Wireless Communications and Mobile Computing* by R&D employees of Eastman Kodak Company discussed the "many hurdles [that] need to be crossed in wireless imaging technology," including "connection bandwidth." Exhibit K, incorporated herein by reference.

28.     Moreover, uploading content from a portable electronic device was an even greater challenge than downloading content in this timeframe, despite consumer demand for such capability (e.g., a 1999 study prepared for AOL found that 86 percent of those surveyed wanted to share photos online): "But here's the thing: Technically speaking, sending a photo from your desktop to Uncle Dave's is a walk in the park compared with transmitting it through a cellular network. For starters, cellular service drops out all the time. And even if the file goes through, the top cellular-data transmission rate in this country is 14.4 Kbps. Transmitting a 100K VGA-resolution photograph would take a few minutes. That's too long, and besides, any appreciable volume of photos would hose a cellular network." Exhibit L (available at

https://web.archive.org/web/20250114191037/http://www.wired.com:80/2000/10/kahn/),

incorporated herein by reference.

29.     It was this limited technological state of the art that the inventions claimed in the '088 Family Patents improved upon.

30.     As stated in the Field of the Invention of the '088 Family Patents, "[t]he present invention relates to the storage and transmission of digital images, and more particularly to a method and system for reducing transmission bandwidth and storage requirements of an image capture device." '088 patent at 1:22-25.

31.     The specification explains that "[a]s the popularity of digital cameras continues [to] grow, the use of on-line photo sharing websites for storing and sharing digital images is

becoming more prevalent." '088 patent at 1:29-31. At the time the application was filed in 2000, the specification stated that "hand-held electronic devices are emerging, including digital cameras that have the capability to connect directly to the Internet without the use of [a] PC." *Id.* at 1:36-38.

32.     The specification indicates that a resulting problem is the bandwidth consumed by digital cameras transmitting images over the Internet. *Id.* at 1:53-64. The specification further explains that "[o]ne reason why digital cameras require so much transmission bandwidth is because images stored on the digital camera are oftentimes transmitted over the Internet more than once," thereby consuming a large amount of bandwidth. *Id.* at 1:65-2:8.

33.     While the specification notes that image compression is one way to reduce bandwidth consumption, such compression (especially techniques using high compression rates) can degrade image quality. *Id.* at 2:9-18.

34.     Based on these issues, the specification identifies the following need in the art as it existed at the time: "Accordingly, what is needed is a method and system for reducing bandwidth and storage requirements of images transmitted from a digital camera. The present invention addresses such a need." *Id.* at 2:19-22.

35.     The specification indicates that it provides a solution to the identified need in the art: "The present invention provides a method and system for reducing storage and bandwidth requirements of a portable image capture device, such as the digital camera. Captured images, which are stored in image files, are transmitted to an online photo-sharing site for permanent storage . . . The uploaded images are thereafter only referred to by an image identifier during subsequent server communication, thereby eliminating redundancy in image transmission." *Id.* at 3:21-30.

36.     The specification states that "[i]n a preferred embodiment, the cameras 14 are provided with wireless connectivity for connecting to the Internet, and are therefore called 'web-enabled' devices . . . In one embodiment, the cameras 14 may connect to the Internet via a service provider 26, which may include a wireless carrier and/or an Internet service provider (ISP) that is capable of servicing many devices simultaneously." *Id.* at 3:48-55.

37.     The specification further states that, in one embodiment, "[t]he online photo-sharing service 16 includes a gateway server 18 for receiving the images and an image database 20 for storing the images. Once uploaded, the images may be stored in the user's account and organized into online web albums. Once the images are stored at the photo-sharing site 16, the images may be viewed and managed over the Internet through a user's web browser 24." *Id.* at 3:56-62.

38.     The specification also indicates that an action list may be displayed to the user so the user may select what actions the server should take with respect to the images by selecting the displayed action list items. *Id.* at 3:62-63-4:13. Figure 6 provides a block diagram illustrating an example action list that may be displayed to a user. The specification discloses various examples of actions, such as printing uploaded images, saving uploaded images in the user's personal space, sending images, specifying where images should be stored, performing a particular analysis or calculation on image data, or deleting an image. *Id.* at 6:36-56, 8:5-55.

39.     The specification provides a block diagram of an example digital camera architecture that could be used with the inventions disclosed and claimed in the '088 Family Patents. *Id.* at 4:14-62; Fig. 2. In addition, the specification states that "[t]he communications hardware 78 may provide wireless connectivity using anyone of a variety of methods. For example, a cellphone may be used to provide the digital camera 14 with wireless capability,

where the camera 14 is connected to the cellphone via a cable or some short-range wireless communication, such as Bluetooth. Alternatively, the camera 14 could be provided with built-in cellphone-like wireless communication." *Id.* at 4:37-44.

40.     The specification further describes the exemplary embodiment by stating that "[t]he communication manager 74 communicates with operating system 70, the IP protocol stack 76, and the communications hardware 78 to establish an Internet connection and to transmit information and the image files 80 from the memory 82 to the photo-sharing service 16." *Id.* at 4:58-62.

41.     The specification also describes an exemplary diagram of one embodiment for an image file. *Id.* at 4:63-5:12; Fig. 3.

42.     The specification provides the following description of one embodiment implementing aspects of the disclosed inventions: "The process begins by assigning a respective image identifier (ID) 84 to each of the images uploaded to the server 18 in step 100. The image files 82 of each of the uploaded images are then optionally reduced in size on the digital camera in step 102. In response to a user request to apply an action to one of the uploaded images, the image ID 84 and the requested action are transmitted to the server 18 in step 104. According to the present invention, because each image is uploaded to the server 18 only once and is thereafter reduced in size to save storage space, and only the image ID 84 is sent to the server 18, both storage requirements and transmission bandwidth required to send the image to multiple destinations from the digital camera are significantly reduced. In addition, as image sizes increase, the amount of reduction in storage and bandwidth required will also increase, which will decrease digital imaging cost for the consumer." *Id.* at 5:31-50; *see also id.* at Fig. 4; *see also id.* at 7:28-8:44; Fig. 7.

43. Thus, the specification of the '088 Family Patents discloses technological solutions to technological problems involved in transmitting digital images, including specifically solutions that reduce transmission-bandwidth requirements.

44. The claims of the '088 Family Patents are directed to inventions claiming one or more of the technological solutions.

45. For example, claims 1, 14, and 22 of the '088 patent are directed to inventions claiming one or more of the technological solutions disclosed in the specification:

> 1. A method for reducing bandwidth requirements of a portable image capture device, the image capture device including means for establishing a communications connection on a network, the method comprising:
>
> assigning an image identifier to a captured image;
>
> transmitting the image and the image identifier from the image capture device to a server on the network for storage;
>
> marking the image as sent in the image capture device;
>
> in response to a user request to perform an action on a selected image from the portable image capture device, determining if the selected image is marked; and
>
> if the selected image is marked, uploading the image identifier to the server, wherein the server performs the action on the image identified by the image identifier, thereby eliminating the need to retransmit the image.
>
> 14. A method for reducing transmission bandwidth requirements of a portable image capture device, the image capture device including means for establishing a communications connection on a network, the method comprising:
>
> a first time captured images are uploaded to a server, assigning by the server a respective image identifier to each of the captured images, wherein each of the images is stored in an image file, each of the image files having a particular size;
>
> receiving from the server the image identifiers assigned for each of the captured images and action information including at least one action that can be applied by the server to the uploaded images;

presenting an action control associated with the action based on the action information; and

in response to detecting a selection of the action control for applying the action to at least one of the uploaded images, transmitting the action and the image identifier assigned to the at least one uploaded image, rather than the image itself, from the portable image capture device to the server, thereby eliminating the need to retransmit the image and reducing transmission bandwidth.

22. A method for reducing storage and transmission bandwidth requirements of a portable image capture device, the image capture device including means for establishing a communications connection on a network, the method comprising:

receiving captured images uploaded from the image capture device to a server on the network;

assigning an image identifier to the uploaded images by the server;

downloading the image identifiers to the image capture device for association with the corresponding uploaded image;

downloading action information to the image capture device including at least one action that can be applied by the server to the uploaded images; and

receiving a request from the portable image capture device to apply the action to at least one of the uploaded images, wherein the request only includes the image identifier assigned to the at least one uploaded image and the requested action, thereby eliminating the need to retransmit the image and reducing transmission bandwidth.

46.     Similarly, claim 1 of the '514 patent is directed to inventions claiming one or more of the technological solutions disclosed in the specification:

1. A method for reducing storage and transmission bandwidth requirements of a portable image capture device, the image capture device including means for establishing a communications connection on a network, the method comprising:

receiving captured images uploaded from the image capture device to a hardware server on the network;

assigning an image identifier to the uploaded images by the hardware server;

downloading the image identifiers to the image capture device for association with the corresponding uploaded image;

downloading action information to the image capture device including at least one action that can be applied by the hardware server to the uploaded images; and

receiving a request from the portable image capture device to apply the action to at least one of the uploaded images, wherein the request includes the image identifier assigned to the at least one uploaded image and the requested action rather than the image itself, thereby eliminating the need to retransmit the image and reducing transmission bandwidth.

47.     Similarly, claims 1, 7, and 13 of the '965 patent are directed to inventions claiming one or more of the technological solutions disclosed in the specification:

1. A method for reducing storage and network transmission bandwidth requirements of a portable image capture device, the method comprising:

receiving a captured image uploaded from the image capture device to a photo-sharing service via at least one hardware server via a network;

providing, to the image capture device, an image identifier assigned to the uploaded image by the photo-sharing service;

providing action information for download to the image capture device including at least one action that can be performed by the photo-sharing service for the uploaded image; and

receiving a request from the portable image capture device to perform the action for the uploaded image, wherein the request includes the image identifier assigned to the uploaded image and information identifying the requested action rather than the image itself, thereby eliminating a need to retransmit the image and reducing transmission bandwidth.

7. A method for reducing storage and network transmission bandwidth requirements of a portable image capture device, the method comprising:

providing for displaying, on an image capture device, action information including an action to be performed for one or more images by a photo-sharing service, wherein the action information is received from the photo-sharing service;

transmitting an image from the image capture device to the photo-sharing service via a network;

receiving an image identifier for the image from the photo-sharing service;

receiving a selection of the action to be performed for the image by the photo-sharing service; and

in response to receiving the selection of the action, transmitting a request from the portable image capture device to the photo-sharing service, wherein the request includes the image identifier assigned to the image rather than the image itself and the request identifies the selected action to the photo-sharing service to perform the selected action for the image identified by the image identifier, thereby eliminating a need to retransmit the image.

13. A method for reducing storage and network transmission bandwidth requirements of a portable image capture device, the method comprising:

providing, by a photo-sharing service using at least one hardware server on a network, action information for download by an image capture device, the action information corresponding to an action that can be performed by the photo-sharing service;

receiving a captured image uploaded from the image capture device to the photo-sharing service;

providing, to the image capture device, an image identifier assigned to the uploaded image by the photo-sharing service; and

receiving a request from the portable image capture device to perform the action for the uploaded image, wherein the request includes the image identifier rather than the image itself, thereby eliminating a need to retransmit the image and reducing transmission bandwidth.

48.    The inventions claimed in the '088 Family Patents were not well-understood, routine, or conventional as of the '088 Family Patents' priority date, but instead claim specific, novel, and nonobvious improvements to the prior art.

49.    This is evidenced by the foregoing acknowledgements of the limited state of the art in multiple periodicals during the relevant timeframe, as well as the discussion in the

specification of the '088 Family Patents regarding the shortcomings in the prior art and the technological improvements provided by the inventions claimed in the '088 Family Patents.

50.    That the inventions recited in the claims of the '088 Family Patents were not well-understood, routine, or conventional as of their priority date is also evidenced by the prosecution histories of the '088 Family Patents.

51.    For example, during prosecution of the '088 patent, the applicant distinguished art cited by the Examiner by stating that "In contrast, the subject matter defined by claim 1 requires only that an image capture device transmit a requested action and an image identifier to the server when the user wants to apply an action to an image that has already been uploaded to the server. Such an arrangement allows the complexity and cost of the image capture device to be reduced, and allows for image-related functions to be easily updated and added on a centralized server without having to add new applications to the image capture device itself." 2005-03-24 Amendment at 14. "This exchange of image data between the camera 100 and server 601 in order to facilitate the user's requested action is reduced or eliminated using the method defined by claim 1." 2005-09-13 Amendment at 4. The applicant further stated that, "Unlike the present invention, Safai is not concerned with reducing transmission bandwidth requirements between the image capture device and the server when the user of the image capture device requests an action related to an image stored on the server." *Id.* The applicant also indicated that such arguments applied to other claims of the application. 2005-03-24 Amendment at 14; 2005-09-13 Amendment at 6.

52.    Moreover, a related patent, U.S. Patent No. 8,868,778, issued on October 21, 2014. Prior to that, on June 25, 2014, the USPTO issued Preliminary Examination Instructions in View of the Supreme Court Decision in *Alice Corporation Pty. Ltd. v. CLS Bank International,*

*et al.* Exhibit D, available at

https://www.uspto.gov/sites/default/files/patents/announce/alice_pec_25jun2014.pdf.

53.    The U.S. Patent & Trademark Office has stated that the duties of a Patent

Examiner include the following:

- Reads and understands the invention set forth in the specification
- Determines whether the application is adequate to define the metes and bounds of the claimed invention
- Determines the scope of the claims
- Searches existing technology for claimed invention
- Determines patentability of the claimed invention

Exhibit E at 11, *The Role of the Patent Examiner*, Sue A. Purvis, Innovation and Outreach

Coordinator, USPTO, available at

https://www.uspto.gov/sites/default/files/about/offices/ous/04082013_StonyBrookU.pdf.

54.    Thus, the Examiner who examined the '778 patent, in accordance with his duties,

(1) read and understood the invention set forth in the specification; (2) determined whether the

application was adequate to define the metes and bounds of the claimed invention; (3)

determined the scope of the claims; (4) searched existing technology for the inventions recited in

the claims of the application; and (5) determined the patentability of the claims.

55.    The Examiner performed these duties in his role as "advocate/protector of [the]

public interest with respect to intellectual property," which involves a "cooperative investigation

between the Examiner and the Applicant, which ensures an Applicant receives a patent only for

that which they are entitled to in accordance with Patent laws." *Id.* at 8-9.

56.    After conducting examination of the claims of the '088 Family Patents, the

Examiner determined that the claims were allowable over the prior art of record. Moreover, the

Examiner determined that the claims of the '778 patent were directed to eligible subject matter in

view of the USPTO's Preliminary Examination Instructions in View of the Supreme Court

Decision in *Alice Corporation Pty. Ltd. v. CLS Bank International, et al*.

57.    The fact that the Examiner allowed the '778 patent under the post-*Alice* standard

demonstrates that the earlier related patents are also directed to eligible subject matter.

58.    In addition, the significance of the inventiveness of the '088 Family Patents is

illustrated by the fact that they have been cited in at least 69 other patent applications, including

those listed in the attached excerpt from Google Patents listing for the '778 patent. Exhibit F at

16-19.

## COUNT I – INFRINGEMENT OF THE '088 PATENT

59.    Plaintiff realleges and incorporates by reference the allegations set forth above, as

if set forth verbatim herein.

60.    Defendant has made, used, sold, offered for sale, and/or imported products that

incorporate one or more of the inventions claimed in the '088 patent, including in internal testing

and usage.

61.    For example, Defendant has infringed at least claims 14 and 22 of the '088 patent,

either literally or under the doctrine of equivalents, in connection with its systems and processes

for managing photos, as detailed in the preliminary claim chart attached hereto as Exhibit M,

which is incorporated herein by reference.

62.    On information and belief, Defendant has performed all steps of these claims or,

alternatively, to the extent a third party performed any step, Defendant conditioned the third

party's use of the functionality of the accused instrumentalities described herein on the

performance of that step. The accused functionality relates to uploading and managing images in

such a way as to reduce bandwidth requirements. For example, on information and belief, a third

party could not use the functionality of the accused instrumentality without performance of the

steps recited in claims 14 and 22 of the '088 patent. Defendant also controlled the manner and/or timing of the functionality. In other words, for a third party to utilize the accused functionality, the steps of claims 14 and 22 of the '088 patent had to be performed in the infringing manner. Otherwise, the accused functionality (and the corresponding benefit) would not have been available to third parties.

63.     Defendant's infringing activities have been without authority or license under the '088 patent.

64.     Because the asserted claims of the '088 patent are method claims, the marking requirement of 35 U.S.C. § 287 does not apply. Therefore, Plaintiff has complied with all applicable requirements of § 287 such that it is entitled to past damages for infringement.

65.     Plaintiff has been damaged by Defendant's infringement of the '088 patent, and Plaintiff is entitled to recover damages for Defendant's infringement, which damages cannot be less than a reasonable royalty.

## COUNT II – INFRINGEMENT OF THE '514 PATENT

66.     Plaintiff realleges and incorporates by reference the allegations set forth above, as if set forth verbatim herein.

67.     Defendant has made, used, sold, offered for sale, and/or imported products that incorporate one or more of the inventions claimed in the '514 patent, including in internal testing and usage.

68.     For example, Defendant has infringed at least claim 1 of the '514 patent, either literally or under the doctrine of equivalents, in connection with Defendant's systems and processes for managing photos, as detailed in the preliminary claim chart attached hereto as Exhibit N, which is incorporated herein by reference.

69.    On information and belief, Defendant has performed all steps of this claim or, alternatively, to the extent a third party performed any step, Defendant conditioned the third party's use of the functionality of the accused instrumentalities described herein on the performance of that step. The accused functionality relates to uploading and managing images in such a way as to reduce bandwidth requirements. For example, on information and belief, a third party could not use the functionality of the accused instrumentality without performance of the steps recited in claim 1 of the '514 patent. Defendant also controlled the manner and/or timing of the accused functionality. In other words, for a third party to utilize the accused functionality, the steps of claim 1 of the '514 patent had to be performed in the infringing manner. Otherwise, the accused functionality (and the corresponding benefit) would not have been available to third parties.

70.    Defendant's infringing activities have been without authority or license under the '514 patent.

71.    Because the asserted claim of the '514 patent is a method claim, the marking requirement of 35 U.S.C. § 287 does not apply. Therefore, Plaintiff has complied with all applicable requirements of § 287 such that it is entitled to past damages for infringement.

72.    Plaintiff has been damaged by Defendant's infringement of the '514 patent, and Plaintiff is entitled to recover damages for Defendant's infringement, which damages cannot be less than a reasonable royalty.

## COUNT III – INFRINGEMENT OF THE '965 PATENT

73.    Plaintiff realleges and incorporates by reference the allegations set forth above, as if set forth verbatim herein.

74.     Defendant has made, used, sold, offered for sale, and/or imported products that incorporate one or more of the inventions claimed in the '965 patent, including in internal testing and usage.

75.     For example, Defendant has infringed at least claims 1 and 13 of the '965 patent, either literally or under the doctrine of equivalents, in connection with Defendant's systems and processes for managing photos, as detailed in the preliminary claim chart attached hereto as Exhibit O, which is incorporated herein by reference.

76.     On information and belief, Defendant has performed all steps of these claims or, alternatively, to the extent a third party performed any step, Defendant conditioned the third party's use of the functionality of the accused instrumentalities described herein on the performance of that step. The accused functionality relates to uploading and managing images in such a way as to reduce bandwidth requirements. For example, on information and belief, a third party could not use the functionality of the accused instrumentality without performance of the steps recited in claims 1 and 13 of the '965 patent. Defendant also controlled the manner and/or timing of the accused functionality. In other words, for a third party to utilize the accused functionality, the steps of claims 1 and 13 of the '965 patent had to be performed in the infringing manner. Otherwise, the accused functionality (and the corresponding benefit) would not have been available to third parties.

77.     Defendant's infringing activities have been without authority or license under the '965 patent.

78.     Because the asserted claims of the '965 patent are method claims, the marking requirement of 35 U.S.C. § 287 does not apply. Therefore, Plaintiff has complied with all applicable requirements of § 287 such that it is entitled to past damages for infringement.

79.    Plaintiff has been damaged by Defendant's infringement of the '965 patent, and Plaintiff is entitled to recover damages for Defendant's infringement, which damages cannot be less than a reasonable royalty.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court find in its favor and against Defendant, and that the Court grant Plaintiff the following relief:

A.    Entry of judgment that Defendant has infringed one or more claims of the '088 patent,

B.    Entry of judgment that Defendant has infringed one or more claims of the '514 patent,

C.    Entry of judgment that Defendant has infringed one or more claims of the '965 patent,

D.    Damages in an amount to be determined at trial for Defendant's infringement, which amount cannot be less than a reasonable royalty, and an accounting of all infringing acts, including but not limited to those acts not presented at trial,

E.    A determination that this case is exceptional, and an award of attorney's fees,

F.    All costs of this action,

G.    Pre-judgment and post-judgment interest on the damages assessed, and

H.    Such other and further relief, both at law and in equity, to which Plaintiff may be entitled and which the Court deems just and proper.

This 4th day of February, 2026.

/s/ *Cortney S. Alexander*
Cortney S. Alexander
GA Bar No. 142690
   cortneyalexander@kentrisley.com
  Tel: (404) 855-3867
  Fax: (770) 462-3299
KENT & RISLEY LLC
5755 N Point Pkwy Ste 57
Alpharetta, GA 30022

Attorneys for Plaintiff